**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Belinda Chavez-Matchie, | No. CV-21-01043-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Belinda Chavez-Matchie's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits. The appeal is fully briefed, (Docs. 17, 18, 19), and the Court now rules.

## I.   BACKGROUND

### A.  Factual Overview

Plaintiff was 44 years old at the alleged disability onset date with a high school education and past relevant work as a resident care aide, phlebotomist, community worker, and program aide. (AR 32). Plaintiff filed her social security disability claim in November 2018, alleging an onset date of May 31, 2016, with severe impairments of degenerative disc disease, dysfunction of major joints, affective disorder, anxiety disorder, and obesity. (AR 20).

### B.  The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1) (E). A claimant is disabled if she suffers from a medically

determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

- 2 -

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. (AR 23). At the second step, the ALJ concluded that Plaintiff had severe impairments of degenerative disc disease, dysfunction of major joints, obesity, affective disorder, and anxiety disorder. (AR 23). At the third step, the ALJ determined Plaintiff's impairments did not meet or equal the criteria in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (AR 24). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b). (AR 25). At the fourth step, the ALJ determined that Plaintiff could not perform her past relevant work. (AR 32). But the ALJ found that Plaintiff could perform other work in the national economy. (AR 32–33). Therefore, the ALJ determined that Plaintiff was not disabled.

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See*

1  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

2  1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more

3  than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

4  Court "review[s] only the reasons provided by the ALJ in the disability determination and

5  may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at

6  1010.

7  **III.   DISCUSSION**

8          Plaintiff raises two potential errors in the ALJ's analysis: 1) the ALJ committed

9  materially harmful error by failing to explain how the opinion evidence is consistent with

10  the record, and 2) the ALJ erred in his analysis of Plaintiff's credibility. The Court

11  addresses each in turn.

12          **A.  Medical Testimony**

13          Plaintiff first argues that the ALJ failed to properly evaluate the medical opinions

14  of Dr. Beig, Dr. Taylor, and Dr. Huddleston. (Doc. 17 at 8–16). Plaintiff filed her

15  application on November 19, 2018. For disability benefits claims filed after March 27,

16  2017, including the application in the present case, new SSA regulations instruct an ALJ

17  not to "defer or give any specific evidentiary weight, including controlling weight, to any

18  medical opinion(s) or prior administrative medical finding(s), including those from [a

19  claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine

20  the persuasiveness of each medical opinion using the following factors: 1) supportability,

21  2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other

22  relevant factors. *Id.* The SSA has explained that supportability and consistency are the most

23  important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate

24  how he considered both factors. *Id.*; Revisions to Rules Regarding the Evaluation of

25  Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017) (codified at 20 C.F.R. § 404).

26          1.  Dr. Beig

27          Plaintiff argues that the ALJ "failed to give accurate information about how he

28  considered the consistency of Dr. Beig's opinion and the ALJ failed to discuss

1    supportability of the opinion." (Doc. 17 at 10–11).

2    The ALJ summarized and considered Dr. Beig's opinion on Plaintiff's physical

3    limitations, writing:

> State agency consultants H. Pham, M.D., and K. Beig, M.D., essentially
> agreed with Dr. Palmer on the claimant's ability to sit, stand and walking,
> finding she could sit about 6 hours and stand and/or walk about 6 hours in an
> 8-hour day. They also concluded the claimant could lift and carry 20 pounds
> occasionally and 10 pounds frequently, which is consistent with Dr. Taylor's
> opinion in this area. (See Ex's 4A, 6A, 8A & 10A). After considering the
> entire record, the undersigned concludes that Dr. Pham and Dr. Beig's
> administrative findings are most persuasive because they are well-supported
> and most consistent with the overall record. The claimant's L5-S1 vertebrae
> were surgically fused in 2016 following a motor vehicle accident, and
> imaging performed in 2017 and 2019 identified several abnormalities,
> including a pars defect and moderate-to-severe bilateral neural foraminal
> narrowing at L4-L5. (Ex's 3F, 14F/50-51 & 54-55, 18F/24, 19F/109, 20F/11-
> 12). Imaging of the cervical spine, including 2018 and 2019 MRIs, confirmed
> multilevel degenerative changes, including moderate-to-severe right
> foraminal stenosis affecting the right C6 nerve root, mild-to-moderate left
> C5-C6 foraminal stenosis, and a mild soft disc protrusion at C6-C7. (Ex's
> 14F/52-53, 19F/109, 20F/43). She underwent an anterior cervical discectomy
> and fusion at C5-6 in January 2020 as a result. (Ex. 20F/46). This evidence
> is consistent with some degree of pain and related limitation.

(AR 27). The ALJ also considered the supportability and consistency of Dr. Beig's

opinion, finding:

> The prior administrative medical findings of Dr. Pham and Dr. Beig are
> persuasive with regard to exertional limitations because they are well-
> supported and generally consistent with the record. They are supported by
> longitudinal assessments of documentary evidence, written explanations, and
> function-by-function assessments. Dr. Beig's findings are best supported,
> however, because he had the benefit of reviewing additional evidence at the
> reconsideration level. Their findings are also generally consistent with the
> record, although Dr. Beig's findings are most consistent with the record,
> including electrodiagnostic testing, MRIs and X-rays, clinical signs of
> normal (or mildly abnormal) gait, dexterity, strength, sensory function, and
> motor function, good results from cervical spine surgery, and reports that she
> can drive, shop, and do light household chores. However, the undersigned
> finds additional postural limitations are warranted given the combination of
> the claimant's body mass index and her orthopedic difficulties and there is
> no evidence she cannot stay safe around hazards; thus, the consultants'
> findings are not persuasive with regard to nonexertional limitations.

(AR 30).

Plaintiff argues that the ALJ "failed to give accurate information about how he considered the consistency of Dr. Beig's opinion and the ALJ failed to discuss supportability of the opinion." (Doc. 17 at 10–11). Specifically, Plaintiff claims that Dr. Beig's opinion agreed with Dr. Palmer's opinion, but the ALJ rejected Dr. Palmer's opinion as "unsupported and inconsistent." (Doc. 17 at 11). Plaintiff also contends that Dr. Beig's opinion is inconsistent with later test results, injections, and surgery. (Doc. 17 at 12).

The ALJ reasonably concluded Dr. Beig's opinion was "most persuasive" because it was well-supported and most consistent with the overall record. The ALJ extensively cited to the record when considering Dr. Beig's opinion. *See* (AR 27 (referencing medical records and MRIs)). The ALJ also noted that Plaintiff's ability to sit and stand were consistent with other opinions, finding that the objective evidence is "consistent with some degree of pain and related limitation." (AR 27).

And although Plaintiff notes that Dr. Beig's opinion came before additional examinations, (Doc. 17 at 12), the ALJ explained that "Dr. Beig's findings are best supported, however, because he had the benefit of reviewing additional evidence at the reconsideration level." (AR 30). Dr. Beig considered Plaintiff's back and neck pain in his examination and was corroborated by independent clinical findings. (AR 128). Finally, the ALJ did account for additional evidence by imposing "additional postural limitations." (AR 30). In finding Dr. Beig's opinion persuasive, the ALJ appropriately balanced multiple factors and found that the opinion was supported and consistent with other evidence.

Plaintiff also argues that the ALJ's reliance on Dr. Beig is misplaced because the ALJ rejected Dr. Palmer's testimony—testimony that Dr. Beig agreed with. (Doc. 17 at 11). Dr. Beig cites Dr. Palmer's examination which expressed normal findings in lift/carry, stand/walk, and sit. (AR 143). But Dr. Beig did not agree with Dr. Palmer's findings regarding lift/carry capacity. (AR 143). Their divergence is accounted for given Dr. Palmer imposed additional limitations based on Plaintiff's reported pain. (AR 31, 1199). But the

1   ALJ concluded that Dr. Palmer's opinion was less well-supported with the overall record

2   compared to Dr. Pham and Dr. Beig because of Dr. Palmer's inconsistencies. (AR 31).

3   Specifically, the ALJ noted that "[a]lthough Dr. Palmer observed 'signs of imbalance,'

4   balance was normal elsewhere." (AR 27). The ALJ also found that Plaintiff's lift/carry

5   restriction of 20 pounds was consistent with the record. (AR 25).

6       Ultimately, the ALJ did not err in finding Dr. Beig's opinion "persuasive" after

7   analyzing the entire medical record and determining it supported his opinion. Additionally,

8   the ALJ did not err in finding that Dr. Palmer's testimony to be "unpersuasive."

9           2.   Dr. Taylor

10      Plaintiff also argues that the ALJ "failed to give sufficient reasoning based on

11  consistency and supportability to reject the opinion of Dr. Taylor." (Doc. 17 at 12).

12      The ALJ found that Dr. Taylor's opinion on Plaintiff's ability to lift and carry was

13  persuasive. But the ALJ also found most of Dr. Taylor's opinion unpersuasive:

> Dr. Taylor's opinion on issues other than lifting and carrying is not
> persuasive because it is not well-supported or consistent with the record.
> (Ex's 17F, 25F). Dr. Taylor's October 2019 opinion was authored after he
> had treated the claimant just a handful of times, and both assessments consist
> primarily of checked boxes. His most recent assessment contains no
> reference to any laboratory findings or clinical signs. Additionally, his most
> recent assessment makes no reference to the claimant's lumbar spine, which
> was the source of the limitations in his earlier assessment, and neither
> assessment contains a detailed narrative explaining the limitations or tying
> objective findings to the limitations. Moreover, Dr. Taylor's opinion is not
> entirely consistent with the record, including electrodiagnostic testing, MRIs
> and X-rays, clinical signs of normal (or mildly abnormal) gait, dexterity,
> strength, sensory function, and motor function, good results from cervical
> spine surgery, and reports that she can drive, shop, and do light household
> chores. In addition, Dr. Taylor did not administer functional tests to identify
> how long the claimant could sit, stand or walk, for example, or why she was
> supposedly "limited" in all activities involving both upper extremities. (E.g.,
> Ex. 25F/3). Furthermore, these manipulative limitations are not entirely
> consistent with electrodiagnostic testing and reports in exhibits 20F and 21F.
> Thus, Dr. Taylor's opinion is not persuasive outside of lifting and carrying.

27  (AR 30–31).

28      Plaintiff argues that the ALJ "failed to give sufficient reasoning based on

consistency and supportability to reject" Dr. Taylor's opinion. (Doc. 17 at 12). Plaintiff claims that the ALJ did not "identify a single activity with enough detail to exceed Dr. Taylor's restrictions." (Doc. 17 at 12). However, the Court finds that the ALJ gave legally sufficient reasons for rejecting Dr. Taylor's opinion. The ALJ considered both the consistency and supportability of Dr. Taylor's opinion, finding it was inconsistent with the objective medical evidence. (AR 30). The ALJ also noted that Dr. Taylor never administered functional tests. (AR 31). In response, Plaintiff argues that Dr. Beig never performed any functional tests, but the ALJ still found his opinion persuasive. (Doc. 17 at 13). But unlike with Dr. Taylor, Dr. Beig's opinion was consistent with the medical record.

Plaintiff also argues that the ALJ erred in rejecting Dr. Taylor's opinion because it consisted of "checked boxes," and that Dr. Taylor "described the basis for his opinion elsewhere in the assessment." (Doc. 17 at 13). But the ALJ acknowledged that Dr. Taylor's opinion was not purely checked boxes: "[B]oth assessments consist primarily of checked boxes." (AR 30). The ALJ also noted that Dr. Taylor did not explain how Plaintiff "was supposedly 'limited' in all activities involving both upper extremities." (AR 31). Furthermore, the ALJ explained how Dr. Taylor's opinions were inconsistent with the objective medical evidence. (AR 30–31). The ALJ was allowed to use the check the box form in evaluating Dr. Taylor's opinions even though he could not reject Dr. Taylor's opinion on that basis. *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017); *see also Dickson v. Comm'r of SSA*, No. CV-20-00931-PHX-DWL, 2021 U.S. Dist. LEXIS 145146, at *12 (D. Ariz. Aug. 3, 2021) (finding that a poorly supported opinion on a check-the-box form was a valid reason for rejecting medical opinion).

Finally, Plaintiff argues that the ALJ erred in discounting Dr. Taylor's opinion related to his July 2020 assessment. (Doc. 17 at 13). Plaintiff claims that the ALJ failed to address Dr. Taylor's opinion on Plaintiff's cervical spine. (Doc. 17 at 14). Yet the ALJ noted that Dr. Taylor's opinion "makes no reference to any laboratory findings or clinical signs." (AR 30). The fact that Dr. Taylor's latest opinion did not reference Plaintiff's lumbar spine also raised questions on the consistency of Dr. Taylor's opinions. *See Smith*

1    *v. Comm'r of SSA*, No. CV-19-04475-PHX-MTL, 2020 U.S. Dist. LEXIS 112849, at *12

2    (D. Ariz. June 26, 2020). Coupled with the objective evidence, the ALJ reasonably

3    concluded that Dr. Taylor's opinion was not persuasive because it was not consistent or

4    supported by evidence.

5                   3.   Dr. Huddleston

6          Finally, Plaintiff argues that the ALJ failed to consider Dr. Huddleston's opinion

7    that Plaintiff's "limitation of 'Tendency to decompensate may impact moderately on

8    concentration and task focus.'" (Doc. 17 at 15).

9          The ALJ addressed Dr. Huddleston's opinion, stating:

10         The August 2019 opinion of James Huddleston, Ph.D., a consultative
           examiner, is persuasive to the extent it is consistent with the RFC. (Ex.
11         16F/7). It is supported by a thorough psychological evaluation, a written
           report, and a function-by-function assessment. It is generally consistent with
12         the record as well, including mental status examination findings, PHQ-9 and
           DLA-20 scores, reports of improved symptoms on medication without side
13         effects, the claimant's ability to do things such as shop, drive, and care for
           herself independently, as well as her ability to interact appropriately with
14         people throughout the record.
15
16    (AR 31).

17         The ALJ found that Plaintiff was limited to "moderately complex tasks" with a

18    Special Vocational Preparation (SVP) of 4. (AR 25). Plaintiff contends that an SVP 4 is

19    inconsistent with Dr. Huddleston's opinion that task focus may be impacted moderately:

20    "Specific Vocational Preparation (SVP) 4 is defined as tasks requiring training over three

21    months and up to six months. The ALJ fails to give any explanation how an SVP of 4 is

22    consistent with Dr. Huddleston's statements." (Doc. 17 at 16).

23         But Plaintiff has not shown how Dr. Huddleston's opinion is inconsistent with an

24    SVP of 4. Nor did she cite any cases where a court said an SVP of 4 is incompatible with

25    moderately complex tasks. Indeed, several courts have found that moderately complex

26    tasks are consistent with an SVP 4 or less. *See, e.g.*, *Hernandez v. Berryhill*, No. EDCV

27    17-1714-KK, 2018 U.S. Dist. LEXIS 92327, at *5 (C.D. Cal. May 31, 2018); *Carroll v.*

28    *Berryhill*, No. SA CV 17-729-PLA, 2018 U.S. Dist. LEXIS 80331, at *7 (C.D. Cal. May

10, 2018); *Vandiver v. Colvin*, No. 2:15-cv-00886-GMN-NJK, 2016 U.S. Dist. LEXIS 186060, at *13 (D. Nev. June 27, 2016); *Engledow v. Saul*, No. 20-CV-00004-LRR, 2021 U.S. Dist. LEXIS 79587, at *54 (N.D. Iowa Feb. 16, 2021). The Court finds that there is not any inconsistency between Dr. Huddleston's opinion and an SVP of 4. Accordingly, the ALJ did not commit harmful error.

**B. Symptom Testimony**

Plaintiff next claims that the ALJ erred by rejecting her subjective symptom testimony in the absence of clear and convincing reasons supported by substantial evidence. (Doc. 17 at 16–19).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At the first step, the ALJ determined that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms." (AR 26). At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 26).

Plaintiff argues the ALJ failed to give a "separate and distinct analysis" for rejecting Plaintiff's symptom testimony. (Doc. 17 at 17). Specifically, the ALJ failed to explain how

the medical findings relate to the symptom testimony and her activities of daily living do not conflict with her testimony. (Doc. 17 at 17–19).

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. First, the ALJ noted that the objective evidence showed Plaintiff "maintained full or nearly strength." (AR 27). The objective evidence also consistently showed that Plaintiff had a normal gait and normal reflexes. (AR 27). Despite the objective evidence, the ALJ also considered Plaintiff's testimony, assessing more limitations than the state agency physicians. (AR 30). The ALJ did not err by finding that the objective medical evidence was inconsistent with Plaintiff's testimony.

The ALJ also considered Plaintiff's treatment history and use of various oral medications. (AR 28). Plaintiff primarily took naproxen and muscle relaxers, and she underwent physical therapy, ablation, branch blocks, and injections. (AR 28). While Plaintiff reported—and the ALJ agreed—that these treatments did not provide complete relief, the ALJ also considered that Plaintiff did not have surgery performed on her lumbar spine since 2016 and cervical spine surgery which essentially relieved the neck pain. (AR 28). The ALJ also found that heat, ice, rest, and anti-inflammatories reportedly relieve her pain. (AR 26). The ALJ did not err in discounting Plaintiff's testimony based on evidence of conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment").

Finally, the ALJ considered Plaintiff's daily activities and found they were inconsistent with the alleged limitations. (AR 30). This is an appropriate factor to consider in assessing a claimant's subjective symptom testimony. *See Revels*, 874 F.3d at 667–68.

The ALJ contrasted Plaintiff's statements that she can perform daily personal care activities with her testimony that she could not perform various work-related activities because of pain. Plaintiff claims that none of the daily living activities contradict her testimony about her inability to work. (Doc. 17 at 18). The Court is mindful that "disability claimants should not be penalized for attempting to lead normal lives in the face of their

limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1016.

Plaintiff's description of her daily activities including driving, shopping, and light chores is not necessarily inconsistent with her reported pain and limitations. (AR 30). But the ALJ also considered those activities with the examinations which found that Plaintiff could lift 20 pounds and stand/walk about 6 hours of an 8-hour workday. (AR 27). These activities indicate that she could move around and perform light physical tasks. The ALJ could reasonably view those skills as transferable to a work-like setting. While Plaintiff interprets the evidence differently, the Court must uphold the ALJ's conclusion where "evidence is susceptible to more than one rational interpretation." *Barnhart*, 400 F.3d at 679.

In sum, the Court finds that the ALJ provided clear and convincing reasons to find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. Accordingly, the Court finds no error.

**IV.   REMEDY**

Plaintiff asks that this matter should be remanded for payment of benefits or a new hearing. Because the Court finds that substantial evidence supports the ALJ's nondisability determination, the Court affirms the ALJ's decision and declines to remand the matter.

**V.   CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the decision of the ALJ is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 22nd day of June, 2022.

James A. Teilborg
Senior United States District Judge